IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED FINANCIAL MORTGAGE CORPORATION, an Illinois Corporation, | ) ) ) | |
| Plaintiff, | ) ) | No. 05 C 2521 |
| v. | ) ) | |
| MORTGAGE CONNECT, LLC, a Florida Limited Liability Company; and JAMES P. KELLY, a Florida citizen, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff United Financial Mortgage Corporation ("UFMC") brings the present Amended Complaint alleging breach of contract and fraudulent misrepresentation claims. Before the Court is Defendants Mortgage Connect LLC's ("Mortgage Connect") and James P. Kelly's ("Kelly") motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). For the following reasons, the Court denies Defendants' motion.

## BACKGROUND

### I.     Parties

UFMC is a corporation incorporated under the laws of the State of Illinois with its principal place of business in the State of Illinois. (R. 7-1, Am. Compl. ¶ 1.) Mortgage Connect is a limited liability company organized under the laws of the State of Florida with its principal place of business in West Palm Beach, Florida. (*Id.* ¶ 2.) The sole member of Mortgage Connect is Jason Regalbuto, a resident of the State of Florida. (*Id.* ¶ 3.) Kelly is the Chief Operating Officer of Mortgage Connect and is a resident of the State of Florida. (*Id.* ¶ 4.)

## II. Parties' Agreement

In 2003, UFMC began to investigate the purchase or license of a computer software system to enable it to originate mortgage loan applications in the wholesale or retail environment via an online transaction platform. (*Id.* ¶ 7.) At that time, UFMC contacted Mortgage Connect which had advertised itself as owning software capable of such tasks. (*Id.*)

After negotiating the terms under which Mortgage Connect would grant UFMC a license to use Mortgage Connect's software, the parties entered into the "Platform Technology Solutions for United Financial Mortgage Corporation: Web Site Licensing, Hosting & Professional Services Agreement" (the "Agreement"). (*Id.* ¶ 12.) The Agreement pertains to UFMC's license and use of Mortgage Connect's mortgage origination application and decision technology. (*Id.* ¶ 9.) Although the Agreement contains a "Governing Law" clause providing for Florida law, the Agreement does not contain a forum selection clause. (*See id.*, Ex. 1, p. 7.)

## III. Florida and Illinois Lawsuits

On April 19, 2005, Mortgage Connect filed a lawsuit against UFMC in Florida state court alleging breach of the Agreement (the "Florida Action"). (R. 12-1, Defs' Mem. in Support of Defs' Mot. to Dismiss, Ex. B). On April 22, 2002, Mortgage Connect's counsel informed UFMC's General Counsel that Mortgage Connect had filed the Florida Action. (R. 16-1, Defs' Request to Take Judicial Notice, Ex. D.) On April 27, 2005, Mortgage Connect served process on UFMC in the Florida Action. (Defs' Mot. to Dismiss Mem., Ex. C.) On May 17, 2005, UFMC removed the Florida Action to the United States District Court for the Southern District of Florida. (*Id.,* Ex. E.) Meanwhile, on April 27, 2005, UFMC filed the present action in the United States District Court for the Northern District of Illinois. (R. 1-1.)

## LEGAL STANDARD

A Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction tests whether a federal court has personal jurisdiction over a defendant. *See* Fed.R.Civ.P. 12(b)(2). In ruling on a motion to dismiss for lack of personal jurisdiction, the Court may consider matters outside the pleadings, including the parties' affidavits. *See Purdue Research Found. v. Sanofi-Synthlabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (complaint need not allege facts supporting personal jurisdiction). When a district court determines a Rule 12(b)(2) motion based on the submission of written materials without holding an evidentiary hearing, the plaintiff need only make a prima facie case of personal jurisdiction. *Id.* In making this determination, courts resolve all factual disputes in favor of the plaintiff. *Id.* The plaintiff, however, bears the burden of establishing that personal jurisdiction over the defendant exists. *Jennings v. AC Hydraulic*, 383 F.3d 546, 548 (7th Cir. 2004).

## ANALYSIS

### I. Subject Matter Jurisdiction

As a preliminary matter, UFMC premises its Amended Complaint on diversity jurisdiction. As the Court previously informed the parties, "[i]t is axiomatic that a federal court must assure itself that it possesses jurisdiction over the subject matter of an action before it can proceed to take any action respecting the merits of the action. The requirement that jurisdiction be established as a threshold matter 'springs from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Cook v. Winfrey*, 141 F.3d 322, 325 (7th Cir. 1998) (quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)).

In its Amended Complaint, UFMC alleges that Defendant Mortgage Connect is a limited liability company organized under the laws of the State of Florida with its principal place of business in West Palm Beach, Florida and that the sole member of Mortgage Connect is Jason Regalbuto, a ***resident*** of the State of Florida. Furthermore, UFMC alleges that James Kelly is a ***resident*** of the State of Florida. "[A]llegations of residence are insufficient to establish diversity jurisdiction. It is well settled that [w]hen the parties allege residence but not citizenship, the court must dismiss the suit." *Held v. Held*, 137 F.3d 998, 1000 (7th Cir. 1998) (citations and quotations omitted).

UFMC only alleges Defendants' residence and not citizenship, thus UFMC has not properly alleged diversity jurisdiction. Because this pleading error is easily curable, however, the Court will address the merits of Mortgage Connect's motion to dismiss and allow UFMC to file a Second Amended Complaint addressing this deficiency.

## II.     Personal Jurisdiction

Personal jurisdiction over a defendant must comport with state statutory law, state constitutional law, and federal constitutional law. *RAR, Inc. v. Turner Diesel Ltd.,* 107 F.3d 1272, 1276 (7th Cir. 1997). Where the Court's subject matter jurisdiction is based on diversity of citizenship, as in the present matter, the Court may exercise personal jurisdiction over Defendants only if personal jurisdiction would be proper in an Illinois court. *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). In *Hyatt*, the Seventh Circuit determined that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Id.* at 715. Further, the *Hyatt* Court concluded that the Illinois long-arm statute's "catch-all" provision, 735 ILCS 5/2-209(c), allowed Illinois state

4

courts to assert personal jurisdiction to the maximum extent permitted by the Illinois and United States Constitutions. *Hyatt,* 302 F.3d at 714 (citing *Central States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.,* 230 F.3d 934, 940 (7th Cir. 2000)). In other words, the catch-all provision allows courts "to exercise jurisdiction on ***any*** basis permitted by the Illinois and United States Constitutions." *Central States,* 230 F.3d at 940 (emphasis added). Based on the *Central States* and *Hyatt* decisions, the catch-all provision allows the Court to move directly to the federal constitutional inquiry, namely, whether exercising personal jurisdiction over Defendants complies with federal due process protections. *See Hyatt,* 302 F.3d at 714-15.

Federal due process requires that nonresident defendants have "minimum contacts" with the forum state "such that the maintenance of suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In determining minimum contacts, courts focus on the relationship between the defendants, the forum state, and the litigation. *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The "purposeful availment" requirement ensures that a nonresident defendant will not be forced to litigate in a jurisdiction based on its random contacts with the forum or another parties' unilateral activity. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474-75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

    **A.**    **Specific Jurisdiction**

A federal court's exercise of personal jurisdiction may be either general or specific. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). General jurisdiction exists when the defendant has "continuous and systematic" contacts with the forum. *Id.* at 416. Specific jurisdiction exists for controversies that are "related to" or "arise out of" a defendant's contacts with the forum state. *Hyatt,* 302 F.3d at 713.

UFMC contends that Mortgage Connect and Kelly have sufficient contacts with the State of Illinois to allow the Court to exercise specific jurisdiction over them. When analyzing specific jurisdiction in contractual matters, the fact that a party has contracted with an out-of-state party alone cannot establish sufficient minimum contacts. *Burger King,* 471 U.S. at 478. Instead, courts take a "highly realistic" approach in examining a defendant's minimum contacts with the forum state, and thus consider the contract in the context of the parties' entire transaction. *Purdue Research Found.,* 338 F.3d at 781 (citing *Burger King,* 471 U.S. at 479). Accordingly, the Court reviews the parties' negotiations, the Agreement's contemplated future consequences, the Agreement's terms, and the parties' course of dealing when determining if Defendants had minimum contacts with Illinois. *See Burger King,* 471 U.S. at 479; *see also RAR,* 107 F.3d at 1277 (factors must indicate purposeful availment making litigation in forum state foreseeable to defendants).[1]

---

[1] Without citation to authority, Defendants contend that the relevant inquiry is "whether the parties' negotiations and Mortgage Connect's performance of the Contract are sufficient contacts with Illinois for purposes of due process." The legal test, as set forth in the body of this opinion, is broader as it encompasses the parties' entire transaction. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 479, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Purdue Research Found. v. Sanofi-Synthlabo, S.A.,* 338 F.3d 773, 781 (7th Cir. 2003).

UFMC asserts that the following list of Mortgage Connect's contacts with Illinois establishes the Court's personal jurisdiction over Defendants: (1) Mortgage Connect solicited UFMC's business by advertising in a periodical circulated in Illinois; (2) Mortgage Connect continued its solicitation of UFMC by sending an invitation to UFMC in Illinois to participate in a web-based presentation demonstrating Mortgage Connect's product; (3) Mortgage Connect ran and controlled a demonstration on UFMC's computers in Illinois via a "WebEx" meeting; (4) Mortgage Connect sent promotional materials to UFMC on more than one occasion; (5) Mortgage Connect's Business Development Administrator sent promotional materials to UFMC's President at his office in Oak Brook, Illinois; (6) Mortgage Connect delivered the parties' Agreement to UFMC in Illinois; (7) Kelly met with UFMC employees in Oak Brook, Illinois in May or June 2003 to solicit UFMC to sign the Agreement; (8) Mortgage Connect emailed UFMC's President a revised copy of the Agreement that originally was sent via overnight mail to his office in Illinois; (9) Mortgage Connect emailed UFMC's President at least two other times concerning contract changes; (10) Mortgage Connect called UFMC to verify receipt of the Agreement; (11) Mortgage Connect invited UFMC to participate in additional WebEx solicitations; (12) UFMC's President emailed Mortgage Connect concerning comments negotiating additional changes to the Agreement to which Mortgage Connect responded; (13) Mortgage Connect sent an email to an UFMC employee regarding factual data; (14) Mortgage Connect drafted a press release that was forwarded to UFMC; (15) Mortgage Connect sent UFMC a set of forms to start the integration process; (16) Kelly and another Mortgage Connect employee traveled to Illinois for three days to meet with UFMC in furtherance of the Agreement; (17) a Mortgage Connect employee participated in training UFMC's employees; (18) Kelly and

Regalbuto participated in a meeting in Oak Brook, Illinois concerning the Agreement; (19) Mortgage Connect delivered its products and services to UFMC in Illinois; and (20) Mortgage Connect employees traveled to Illinois throughout the term of the Agreement to train UFMC's employees and resolve problems with its delivery of service.

Based on these contacts, Defendants' contacts with Illinois were not random or attenuated. In fact, in Defendants' response to UFMC's interrogatories, Defendants admit that "[t]here are many thousands of communications in electronic form between Defendants and Plaintiff...." (R. 15-1, Ex. B, Defs' Resp. to Pl.'s Interrog. #10.) Thousands of communications with UFMC in Illinois "cannot by any stretch of the imagination be characterized as random, isolated, or fortuitous." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) (regular monthly sales of thousands of magazines in forum state not random). Defendants' myriad communications – coupled with at least four Mortgage Connect employees, including Kelly, traveling to the State of Illinois in furtherance of the parties' Agreement – constitute sufficient minimum contacts with Illinois. *See Burger King,* 471 U.S. at 475-76 (when defendant deliberately engages in significant activities with forum state, he has availed himself to doing business in state and burden of litigating in state). Therefore, UFMC has made a prima facie showing of personal jurisdiction.

B.  **Physical Contacts**

Defendants, however, contend that because the parties' negotiated the Agreement "entirely" by telephone, facsimile, and email, they did not have sufficient contacts with Illinois. The record, however, also reflects that Mortgage Connect had physical contacts with Illinois during the parties' transaction, as well as contact by telephone, facsimile, and email. Again,

8

Defendants admit that Kelly, on behalf of Mortgage Connect, traveled to Illinois on at least two occasions in connection with Mortgage Connect's relationship with UFMC. (Defs' Resp. to Pl.'s Interrog. #4, 7, 8.) Further, Defendants admit that Regalbuto and two other Mortgage Connect employees traveled to Illinois on separate occasions for purposes of the parties' Agreement. (*Id.*) Based on these admissions, Defendants' contention that the parties negotiated the Agreement entirely via telephone, facsimile, and email is dubious.

Moreover, the Supreme Court has unequivocally held that the absence of physical contact with the forum does not defeat personal jurisdiction if the defendant purposefully conducts business in the forum state. *Burger King,* 471 U.S. at 476; *see also Heritage House Rest., Inc. v. Continental Funding Group, Inc.,* 906 F.2d 276, 283 (7th Cir. 1990) (defendant created business relationship "based on telephone and mail contacts rather than physical presence, and it should not be able to avoid jurisdiction based on that distinction"). Specifically, the Court in *Burger King* explained:

> Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

*Id.* Here, Mortgage Connect purposely directed communications to UFMC when negotiating the Agreement, during the implementation of its software, and throughout the parties' entire transaction. *See id.* at 479. Defendants' argument that the parties' communications are "incapable of supporting the exercise of personal jurisdiction" fails.

    **C.**    **Other Factors Regarding Personal Jurisdiction**

Defendants further contend that other factors weigh in favor of the Court not exercising personal jurisdiction over them. For instance, Defendants argue that it was UFMC "who reached into Florida and initiated contact with Mortgage Connect." Although courts examine which party initiated a business transaction in determining personal jurisdiction, this factor is only one of many factors that courts consider. *See Logan Prods., Inc. v. Optibase, Inc.,* 103 F.3d 49, 53 (7th Cir. 1996) ("which party initiated the transaction is merely one helpful factor in the jurisdictional equation"). Nevertheless, UFMC contends that Defendants initiated the business transaction, and at this procedural posture, the Court must resolve all factual disputes in favor of UFMC. *See Purdue Research Found.,* 338 F.3d at 782. Therefore, this factor weighs in favor of the Court exercising personal jurisdiction over Defendants.

Next, Mortgage Connect argues that because the Agreement was executed in Florida, the Court should not exercise personal jurisdiction over Defendants. Where the contract was formed is only one of several factors courts take into account in determining personal jurisdiction. *See, e.g., Real Colors, Inc. v. Patel,* 974 F.Supp. 645, 648-49 (N.D. Ill. 1997); *see also Sky Valley Ltd. P'ship v. ATX Sky Valley, Ltd.,* 776 F. Supp. 1271, 1275 (N.D. Ill. 1991) ("it is not necessary that the contract at issue be formed in Illinois"). This factor weighs in favor of Defendants.

In addition, Defendants contend that the Court cannot exercise personal jurisdiction over them because Mortgage Connect's software is stored on computer servers located in Florida and that UFMC and its designees "use the Internet to electronically travel to Florida in order to access the software that was stored on the Florida-based servers." Indeed, when a defendant provides services over the Internet, the location of the defendant's server is one of several factors

courts consider in the personal jurisdiction inquiry. *See, e.g., Zippo Mfg. Co. v. Zippo Dot Com. Inc.,* 952 F.Supp. 1119, 1124-25 (W.D.Pa. 1997); *Images of the World v. Continental Am. Indus., Inc.,* No. 04 C 7002, 2005 WL 2171193, at *3 (N.D. Ill. Aug. 30, 2005) ("where a defendant actively conducts business over the Internet and generates revenue through direct commercial transactions with Illinois residents, it is subject to suit in Illinois").

Finally, as Defendants correctly assert, the Court should consider the parties' choice of law provision when determining whether to exercise personal jurisdiction. *See Purdue Research Found.,* 338 F.3d at 786 ("choice of law provisions may be some indication that a defendant purposefully has availed itself of the protection of the laws of a particular jurisdiction"). A choice of law provision, "standing alone would be insufficient to confer jurisdiction." *Burger King,* 477 U.S. at 482. Accordingly, although some factors such as the choice of law provision, the server location, and where the contract was formed weigh in favor of Defendants' argument, these factors do not defeat the Court's exercise of personal jurisdiction based on the overwhelming amount and quality of physical and electronic contacts Defendants had with the State of Illinois.

### D. Personal Jurisdiction Over Defendants is Reasonable

Because UFMC has made a prima facie showing of personal jurisdiction, the Court must determine whether its exercise of jurisdiction would be reasonable, namely, compatible with "traditional notions of fair play and substantial justice." *Burger King,* 471 U.S. at 476-78*; see also World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) ("protection against inconvenient litigation is typically described in terms of 'reasonableness' or "fairness'"). Personal jurisdiction must be reasonable in light of the burden

on the defendant, the plaintiff's interest in effective obtaining relief, the interests of Illinois, the judicial system's interest in efficiently resolving controversies, and the "shared interest of the several States in furthering fundamental substantive social policies." *See Asahi Metal Indus. Co. v. Superior Court of California,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (citations omitted). When a defendant has purposefully directed his activities to the forum state, the defendant must present a compelling case that a court's exercise of personal jurisdiction would be unreasonable. *Burger King,* 471 U.S. at 477-78.

Defendants do not present a compelling case that the Court's exercise of personal jurisdiction would be unreasonable. In fact, Defendants failed to make any arguments concerning the reasonableness of personal jurisdiction until their Reply Brief. It is well-settled law in this Circuit that arguments made for the first time in a Reply Brief are waived. *See Carter v. Tennant Co.,* 383 F.3d 673, 679 (7th Cir. 2004).

In any event, the *Asahi* factors weigh in favor of personal jurisdiction over Defendants. First, it would not be unduly burdensome for Defendants to litigate in Illinois because modern advances in transportation and communication make it reasonable to litigate in another state. *See Euromarket Designs, Inc. v. Crate & Barrel, Ltd.,* 96 F.Supp.2d 824, 840 (N.D. Ill. 2000). Also, Illinois has a strong interest in providing a forum for its citizens who claim that a nonresident defendant failed to fully perform under a contract and protecting the contract rights of businesses located in Illinois. *See Heritage House Rest.,* 906 F.2d at 284; *United States Gypsum Co. v. All Tank Sales & Supply Co.,* 977 F.Supp. 1340, 1343-44 (N.D. Ill. 1997). In addition, as discussed in detail below, Defendants' questionable conduct in bringing the Florida Action weighs in favor of litigating UFMC's claims in this forum due to UFMC's interest in

12

obtaining effective relief and in the interests of justice. Based on these factors, the Court's exercise of personal jurisdiction over Defendants is reasonable and compatible with "traditional notions of fair play and substantial justice."

### III.     Compulsory Counterclaim

Next, Defendants contend that Federal Rule of Civil Procedure 13(a) bars the present action because UFMC's claims are compulsory counterclaims to the Florida Action. Despite the doctrine's name, Rule 13(a) does not compel a litigant to present a compulsory counterclaim. *Publicis Commc'n v. True N. Commc'ns, Inc.*, 132 F.3d 363, 365 (7th Cir. 1997). Instead, only parties that want to avoid a later affirmative defense of claim preclusion (res judicata) need do so. *Id.* In other words, Rule 13(a) does not expressly bar a litigant from bringing an independent action that may have been a compulsory counterclaim. *Inforizons, Inc. v. VED Software Servs., Inc.,* 204 F.R.D. 116, 118 (N.D. Ill. 2001); *see also* 6 Wright, Miller, & Kane, Federal Practice & Procedure, § 1418. Nonetheless, courts generally stay or dismiss an action if a parties' claims are compulsory counterclaims in the interests of judicial economy. *Inforizons,* 204 F.R.D. at 118*; see also In re Price,* 42 F.3d 1068, 1073 (7th Cir. 1994) (purpose of Rule 13(a) is to avoid multiplicity of lawsuits).

First, the Court notes that on October 11, 2005, the district court in the Southern District of Florida granted Mortgage Connect's motion to dismiss UFMC's "reservation of right" to later assert a counterclaim based on the claims in present lawsuit. (R. 18-1, Pl.'s Request for Judicial Notice, Ex. F.) Second, in response to Defendants' compulsory counterclaim argument, UFMC contends that Mortgage Connect used unethical tactics to be the first to file a lawsuit. The Seventh Circuit does not rigidly adhere to the first to file rule, and thus second-filed actions may

proceed in the interests of justice. *Schwartz v. National Van Lines*, 317 F.Supp.2d 829, 833 (N.D. Ill. 2004) (citing *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749-50 (7th Cir. 1987)). There is a rebuttable presumption, however, that courts should allow the first-filed action to proceed and should abate the second-filed action. *Inforizons,* 204 F.R.D. at 118. As such, UFMC has the burden of establishing "a compelling circumstance or imbalance of convenience to overcome the presumption that the second-filed case should be dismissed in favor of the first-filed case." *Id.* "[C]ourts refuse to enforce the first to file rule where forum shopping motivated the first-filed action or the first-filed action constitutes an 'improper anticipatory filing' made under threat of an imminent suit and asserting the mirror-image of that suit in another district." *Schwartz,* 317 F.Supp.2d at 833.

UFMC submits the affidavit of Michael Kraft, UFMC's General Counsel, in support of its argument that Mortgage Connect filed an "improper anticipatory filing."[2] Kraft avers that on April 15, 2005, he, as UFMC's General Counsel, participated in a telephone conference with Mortgage Connect's attorney, Michael Brenner, during which Kraft explained that he had the authority to file a lawsuit against Mortgage Connect to recover damages resulting from Mortgage Connect's breach of the parties' Agreement and fraudulent misrepresentations. (R. 16-1, Defs' Request to Take Judicial Notice, Ex. D, Kraft Aff. ¶ 3.) Brenner responded by requesting that UFMC hold off filing the lawsuit so he could discuss settlement possibilities with his client, Mortgage Connect. (*Id.*) Kraft further avers that on April 19, 2005, Brenner and another attorney representing Mortgage Connect, Sanford Bohrer, left him a telephone message

---

[2] UFMC also relied on Michael Kraft's affidavit in support of its Motion to Transfer Venue brought in the Southern District of Florida. There, the district court denied UFMC's motion. (R. 16-1, Defs' Request to Take Judicial Notice, Ex. D.)

requesting that he call Bohrer. (*Id.* ¶ 4.) On April 22, 2005, Kraft called Bohrer to discuss a possible settlement and during the conversation Bohrer informed him that Mortgage Connect had already filed a lawsuit in Florida state court alleging that UFMC breached the parties' Agreement. (*Id.* ¶ 5.)

Based on these facts, UFMC contends that it withheld filing the present lawsuit at Brenner's request in order to discuss settlement possibilities with Mortgage Connect. The next time UFMC's General Counsel spoke to Mortgage Connect's attorneys, they had already filed the Florida Action alleging breach of the parties' Agreement. Indeed, Defendants filed the Florida Action on April 19, 2005 -- only four days after Kraft informed Brenner that he had the authority to bring a lawsuit against Mortgage Connect for breach of contract and fraudulent misrepresentation.

Defendants argue that Kraft's affidavit is not accurate. Defendants, however, have not filed an affidavit, such as Brenner's affidavit, to counter UFMC's factual assertions. Because the Court must resolve all factual disputes in favor of UFMC at this procedural posture, *see Purdue Research Found.,* 338 F.3d at 782, the Court concludes that Mortgage Connect's filing of the Florida Action was an improper anticipatory filing made under threat of an imminent lawsuit. Accordingly, UFMC has established a compelling reason for the Court not to enforce the first to file rule. *See Schwartz,* 317 F.Supp.2d at 833. In addition, due to the Florida district court's October 11, 2005 ruling as to UFMC's potential counterclaims, the Court denies Defendants' request to rule that UFMC's claims are compulsory counterclaims to the Florida Action.

## CONCLUSION

For these reasons, the Court denies Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(2). Further, the Court grants both Plaintiff's and Defendants' Requests to Take Judicial Notice. *See* Fed. R. Evid. 201(b). The Court also grants Plaintiff leave to file a Second Amended Complaint to properly allege diversity jurisdiction.

Dated: October 26, 2005

                      **ENTERED**

                      _____
                      **AMY J. ST. EVE**
                      **United States District Court Judge**